UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

BENJAMIN ROBERTS,
    Plaintiff,

    v.

TRIPLANET PARTNERS LLC,
SOPHIEN BENNACEUR,
IMED BENNACEUR, and
MOEZ BENNACEUR,
    Defendants.

No. 3:12cv1222 (JAM)

## RULING ON PENDING MOTIONS
## RELATING TO PREJUDGMENT REMEDY AND FINANCIAL DISCOVERY

    This case arises from a failed business relationship between plaintiff Benjamin Roberts and defendants TriPlanet Partners LLC ("TriPlanet") and TriPlanet's managing members, Sophien and Imed Bennaceur. In this ruling, the Court addresses significant issues concerning prejudgment remedy orders as well as outstanding discovery issues relating to the defendants' financial records.

    As described more fully in a prior ruling (Doc. #78), Roberts was a high ranking officer of a major American insurance company when he was recruited in 2010 by Sophien Bennaceur to work for TriPlanet on a major project with the Royal Bank of Scotland. According to the terms of his employment agreement, TriPlanet was to pay Roberts a base salary of $500,000, as well as to grant him an equity stake of up to 25% in the company along with annual equity payouts, based in part on the achievement of certain performance targets. Within two years, however, TriPlanet terminated Roberts' employment in June 2012 after he complained to the Bennaceurs that he had not received his equity payouts.

    Two months later, Roberts filed suit in August 2012 seeking full payment of his salary

and his annual equity payouts for 2010 and 2011.[1] In October 2012, Roberts filed for a prejudgment remedy, and the Court (*Stefan R. Underhill, J.*) conducted an evidentiary hearing in March 2013 at which both Roberts and Sophien Bennaceur testified. Roberts testified and produced evidence that he had reached his target goals for 2010 and 2011, and that Sophien and Imed Bennaceur had assured him that he had reached these goals; he calculated that he was entitled to more than $9 million in equity payouts. In opposition, Sophien Bennaceur testified that he did not believe that Roberts had earned the full equity interest but "admitted that, because he had yet to fully examine all of the relevant financial data, he was unsure whether Roberts had, in fact, met the various benchmarks outlined in the Employment Agreement that would entitle him to a 15–25% equity stake in the firm." (Doc. #78 at 6). Sophien Bennaceur also challenged Roberts' estimates of TriPlanet's profit margins, and defendants submitted their own financial summaries outlining TriPlanet's estimated profits in 2010 and 2011; based on defendants' own summaries, Roberts in turn produced a revised damages calculation of $8,858,949.

In June 2013, Judge Underhill entered an order in plaintiff's favor for a prejudgment remedy in the amount of $8,858,949. (*See* Doc. #78). Judge Underhill noted that "the defendants have voiced less than full-throated opposition to the plaintiff's claims," and that "Sophien testified that he was merely *unsure* whether Roberts had met the targets contemplated under the Employment Agreement, because he has not yet had the opportunity to fully review all of the relevant financial data." *Id.* at 7. Judge Underhill also granted plaintiff's motion for defendants to disclose assets sufficient to satisfy the prejudgment remedy amount.

More motions have ensued. On the one hand, defendants cite new financial evidence as a

---

[1] A fourth defendant, Moez Bennaceur, has more recently been named in the Amended Complaint (Doc. #110) in connection with his alleged participation to engage in a fraudulent transfer of property to impede plaintiff's collection of any judgment against the remaining defendants; Moez Bennaceur has not entered an appearance and is now the subject of a motion for default judgment (Doc. #180). Unless otherwise noted, references to "defendants" in this ruling refer to TriPlanet Partners LLC, Sophien Bennaceur, and Imed Bennaceur.

basis for moving to vacate the Court's prior prejudgment remedy order and to have a new prejudgment remedy order entered in their favor in the amount of $26,000 (along with a corresponding order to require plaintiff's disclosure of assets). (*See* Docs. #157, #158). On the other hand, plaintiff challenges defendants' compliance with the Court's prior order of asset disclosure, and he moves for a preliminary injunction to require defendants to move suitable assets into Connecticut to satisfy the existing prejudgment remedy amount of nearly $8.9 million; he also moves for sanctions stemming from defendants' general failure to comply with a broad range of financial discovery requests. (*See* Doc. #121). Defendants have cross-moved for sanctions against plaintiff stemming from plaintiff's motion and his alleged failure to comply with discovery requests. (*See* Doc. #132). Each of these motions is addressed below.

    **A. Defendants' Motion to Vacate the Prejudgment Remedy Order**

Rule 64 of the Federal Rules of Civil Procedure authorizes the Court to enter a prejudgment remedy as may be permitted "under the law of the state where the court is located" in order "to secure satisfaction of the potential judgment." Fed. R. Civ. P. 64(a). Connecticut law in turn allows for entry of a prejudgment remedy if a party shows probable cause that a judgment will enter in the amount sought for a remedy. *See* Conn. Gen. Stat. § 52-278d(a). The prejudgment remedy statute further allows the Court, in its discretion, to modify or vacate a previously ordered prejudgment remedy upon presentation of evidence that would have justified a modification or denial of a prejudgment remedy at the initial hearing. Conn. Gen. Stat. § 52-278k; *see also Common Condo. Ass'ns, Inc. v. Common Assoc.*, 192 Conn. 150, 154, 470 A.2d 699 (1984) (noting court's discretion in prejudgment remedy context and that "court [is] not obliged to afford a full scale hearing in view of the limited nature" of a prejudgment remedy modification request).

Defendants rest their motion to vacate on a new financial analysis report that has been prepared by an accounting firm, Raich, Ende, Malter & Co., LLC ("Raich"). The report is not an independent audit of TriPlanet's records but is allegedly a compilation derived from TriPlanet's internal financial records and with extensive disclaimers about its reliability. (Doc. #160 at 4).[2]

Defendants have not convincingly explained why this type of report or similar evidence could not have been adduced at the time of the initial prejudgment remedy hearing. Defendants were on notice of the need for a detailed financial accounting since the filing of this lawsuit in August 2012 and plaintiff's motion for a prejudgment remedy in October 2012. They had many months to retrieve and produce necessary financial information before Judge Underhill conducted an evidentiary hearing in March 2013 and issued his ruling in June 2013. In view that the financial information at issue concerns the affairs of a closely held company that is personally controlled by defendants Sophien and Imed Bennaceur, the Court considers it implausible that defendants' newly produced financial analysis could not have been adduced before the initial prejudgment remedy hearing and ruling.

Noting that their company conducts much of its business from Tunisia, defendants complain of "civil disorder in Tunisia" and "a month of Ramadan," and they also blame delays on accounting firms that allegedly declined to assist them. But these reasons are far from persuasive. Sophien Bennaceur's affidavit attests that he had difficulties hiring an accountant, yet does not explain the reason for those difficulties. (Doc. #133). Emails purporting to show accountants' delays are dated April and July 2013, and they do not explain the many remaining

---

[2] The cover letter to the Raich report cautions that "[w]e have not audited or reviewed the accompanying financial statements and, accordingly, do not express an opinion or provide any assurance about whether the financial statements are in accordance with accounting principles generally accepted in the United States of America." Doc. #160 at 4. The cover letter additionally warns that "[m]anagement has elected to omit substantially all of the disclosures and statements of cash flows required by accounting principles generally accepted in the United States of America." *Ibid.*

months between the time the complaint was filed in August 2012 and when defendants engaged Raich in 2013. Docs. #133-1, #133-2. The newspaper articles submitted by defendants about "civil unrest" in Tunisia in July and August 2013 do not explain the remaining time that has elapsed. (Doc. #133-3).

"The law of the case doctrine commands that 'when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case' unless 'cogent and compelling reasons militate otherwise.'" *Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009) (quoting *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002)); *see also Gen. Elec. Capital Corp. of Puerto Rico v. Rizvi*, 113 Conn. App. 673, 681–82, 971 A.2d 41 (2009) ("law of the case" doctrine foreclosed successive challenge to prior prejudgment remedy order in absence of "new or overriding circumstances").

Although the purpose of Conn. Gen. Stat. § 52-278k is to allow for modification of an initial prejudgment remedy order in appropriate circumstances, the statute is not an invitation to parties to delay the retrieval and production of evidence that could have been adduced at an initial hearing. Accordingly, the Court denies defendants' motion to vacate the prior prejudgment remedy order and for a prejudgment remedy and order of asset disclosure against plaintiff.[3]

### B. Plaintiff's Challenge to Defendants' Compliance with the Asset Disclosure Order

Plaintiff challenges the adequacy of defendants' compliance with the Court's prior order for asset disclosure, *see* Conn. Gen. Stat. § 52-278n, and plaintiff further moves for a preliminary injunction to compel defendants to move assets into Connecticut such that they might be readily subject to attachment. The Court first evaluates the adequacy of defendants' compliance with the

---

[3] Defendants' claims are further undercut by their own failure (as discussed below) to comply with multiple discovery demands for financial records that plaintiff would need to challenge defendants' newly produced financial evidence.

Court's asset disclosure order before evaluating plaintiff's request for injunctive relief.

Following a prior dispute about defendants' failure to disclose assets, Judge Underhill entered an order on October 1, 2013, for defendants, collectively and individually, to disclose assets at least equal to the amount of the prejudgment remedy. (Doc. #113). Defendants responded by filing a statement disclosing a software program allegedly owned by TriPlanet that defendants claim has a value of $10 million.

"[T]he burden of proving compliance with the pre-trial order rests upon the party whose duty it is to comply with the order." *Ginns v. Towle*, 361 F.2d 798, 801 (2d Cir. 1966). The valuation of property disclosed pursuant to a prejudgment remedy asset disclosure order is the market value of such property, as measured by the "market" that is available to the beneficiary of the prejudgment remedy order. *Edmands v. CUNO, Inc.*, 277 Conn. 425, 456–58, 892 A.2d 938 (2006).

Defendants have not adequately complied with the Court's prior disclosure order. To begin with, the Court previously required defendants to disclose "collectively *and individually*, their assets within the United States" or elsewhere if inadequate to meet the prejudgment remedy amount. (Doc. #113 at 2 (emphasis added)). Yet only TriPlanet has purported to disclose its assets, and there has been no asset disclosure by the individual defendants Sophien and Imed Bennaceur.

Moreover, TriPlanet's disclosure is itself inadequate. Leaving aside the parties' dispute about whether intellectual property may serve as a basis for asset disclosure, it is far from clear that plaintiff could ever realize $10 million from any attachment of the software program. The $10 million valuation is supported only by means of a highly redacted offer-to-purchase letter that was allegedly furnished by an anonymous third party. This letter inspires little confidence,

because it does not identify the would-be purchaser so that plaintiff could readily verify the amount claimed. In addition, plaintiff raises substantial doubts about whether TriPlanet has legal ownership of the software, and these doubts are consistent with the prior failure of defendants to have noted the software as an asset of the company in financial documents that were submitted at the prejudgment remedy hearing in March 2013.

Accordingly, defendants have failed to comply with the Court's asset disclosure order. In view of defendants' failure of compliance, the Court orders that on or before Friday, May 23, 2014, *each* one of the defendants TriPlanet, Sophien Bennaceur, and Imed Bennaceur shall individually and with specificity disclose tangible, marketable assets in the United States that are sufficient individually to meet the prejudgment remedy amount of $8,858,949. For each of defendants' disclosures, these assets must self-evidently bear the ownership name of each defendant, must have their specific location disclosed, and must have a readily determinable market value and without impediment or cloud to their attachment upon additional legal process. If any of the defendants do not have sufficient marketable assets within the United States, then each defendant shall disclose marketable assets that they hold worldwide in an amount sufficient to satisfy the prejudgment remedy order.

### C. Plaintiff's Motion for a Preliminary Injunction to Move Assets

Beyond his challenge to defendants' compliance with the existing asset disclosure order, plaintiff further moves for a preliminary injunction to require defendants to move into the District of Connecticut assets sufficient to satisfy the prejudgment remedy order. A federal court

> may grant a preliminary injunction if the moving party establishes "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief."

*Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*, 696 F.3d 206, 215 (2d Cir. 2012) (quoting *UBS Fin. Servs., Inc. v. W. Va. Univ. Hosps., Inc.*, 660 F.3d 643, 648 (2d Cir. 2011)); *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (applying a similar four-part test).[4]

Plaintiff has failed to show irreparable harm. The Second Circuit has made clear that "courts may no longer simply presume irreparable harm," but that "plaintiffs must demonstrate that, on the facts of the case, the failure to issue an injunction would actually cause irreparable harm," and "[c]ourts must pay 'particular attention to whether the remedies available at law, such as monetary damages, are inadequate to compensate for [the] injury.'" *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 285 (2d Cir. 2012) (internal quotations and citation omitted), *cert denied*, 133 S. Ct. 1585 (2013). Put differently, "only harm shown to be non-compensable in terms of money damages provides the basis for awarding injunctive relief." *Wisdom Imp. Sales Co., LLC v. Labatt Brewing Co., Ltd.*, 339 F.3d 101, 113–14 (2d Cir. 2003). Thus, the Second Circuit has declined to find irreparable harm to allow an injunction that would have required out-of-state assets to be brought into a state in aid of a prejudgment remedy. *See Chem. Bank v. Haseotes*, 13 F.3d 569, 573 (2d Cir. 1994) ("[t]he irreparable harm alleged by Chemical is its fear that Haseotes will render himself judgment-proof" by selling assets but "generally speaking, an injunction is not available to remedy a loss that may be remedied by an award of money damages"). The Second Circuit's decision in *Chemical Bank* is controlling here.[5]

---

[4] Both federal and state law governing preliminary injunctions require that the moving party show "irreparable harm." *See Aqleh v. Cadlerock Joint Venture II, L.P.*, 299 Conn. 84, 97, 10 A.3d 498 (2010) (quoting *Moore v. Ganim*, 233 Conn. 557, 569 n.25, 660 A.2d 742 (1995)). Therefore, I need not decide whether, when applying state law for prejudgment remedies pursuant to Fed. R. Civ. P. 64, I should correspondingly apply the state law standard for issuance of a preliminary injunction. *Cf. Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 318 n.3 (1999) (noting but not deciding similar choice-of-law issue for preliminary injunctive relief under Fed. R. Civ. P. 65).

[5] It is true that an exception may exist for "monetary injury situations involving obligations owed by insolvents" or otherwise "where, but for the grant of equitable relief, there is a substantial chance that upon final

Although I need not decide the issue, there is also good reason to doubt whether—even assuming irreparable harm—the Court has legal authority to enjoin defendants to bring their assets into Connecticut in satisfaction of a prejudgment remedy order. Indeed, the parties agree that the Court lacks inherent authority to do so under Fed. R. Civ. P. 65 and under traditional equitable relief principles of the common law. *See Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 318–23 (1999). Any authority the Court might have to enjoin defendants must derive (if at all) from Connecticut law, as it may be applied in accordance with Fed. R. Civ. P. 64. Yet, Connecticut's general prejudgment remedy statute defines only four forms of prejudgment remedies (attachment, foreign attachment, garnishment and replevin), and it expressly excludes a "temporary restraining order" from the definition of a prejudgment remedy. Conn. Gen. Stat. § 52-278a(d). The Connecticut Supreme Court has otherwise warned that the statute must be strictly construed as it affords remedies in derogation of background common law. *See Feldmann v. Sebastian*, 261 Conn. 721, 725–26, 805 A.2d 713 (2002) (citations omitted). It is little wonder, then, that the Connecticut Appellate Court has observed that "[w]hether a temporary injunction should become the fifth [prejudgment remedy] must be determined by the legislature, not this court." *Rhode Island Hosp. Trust Nat. Bank v. Trust*, 25 Conn. App. 28, 31, 592 A.2d 417 (1991). In any event, because plaintiff has failed to show irreparable harm, there is no need to resolve the full scope of this Court's authority to enjoin a party to move assets into Connecticut for purposes of attachment as a prejudgment remedy.[6]

---

resolution of the action the parties cannot be returned to the positions they previously occupied," *Brenntag Int'l Chemicals, Inc. v. Bank of India*, 175 F.3d 245, 249–250 (2d Cir. 1999), but the facts of this case do not remotely suggest that defendants are insolvent or on the brink of bankruptcy.

[6] Plaintiff mischaracterizes certain precedent to hold that "the Court may enjoin Defendants to bring into the State of Connecticut assets sufficient to effectuate a prejudgment remedy of attachment." (Doc. #121-1 at 18 (citing cases); *see also* Doc. #139 at 7–8). For example, Judge Kravitz's ruling in *Mammoet USA NE Corp. v. Dick*

**D. Defendants' Non-Compliance with Discovery Demands**

Plaintiff moves for sanctions against defendants for their failure to comply with discovery demands (Doc. #121). On June 25, 2013, the Court ordered defendants to produce within ten days "all non-privileged underlying financial documents that were provided to Defendants' accounting firm(s) to enable those firms to prepare financial statements," about which Sophien Bennaceur testified during the PJR hearing on March 12, 2013. (Doc. #79). Separately, on June 7, 2013, plaintiff also served discovery demands for a wide range of tax, banking, and other financial documentation that would cast light on whether plaintiff was properly paid his salary and equity payouts. (*See* Doc. #121 at 10–11 (setting forth specific discovery request items)).

It is the Court's view that all these requested corporate financial records of TriPlanet as well as the income-related tax and banking records for each of the three defendants are properly discoverable because of their obvious relevance and importance to the issues in dispute in this case involving the measurement of corporate performance and the tracking and measurement of salary payments, equity interests, and equity payouts to plaintiff and Sophien and Imed Bennaceur. To the extent that defendants have objected to these categories on relevancy grounds (as they did at the last oral argument before the Court), the Court overrules these objections.

Accordingly, to the extent that they have not already done so (*e.g.*, as exhibits

---

*Corp.*, No. 3:02CV2022 (MRK), 2003 WL 22937724 (D. Conn. Oct. 9, 2003), expressly declined to resolve this issue, noting that "the issue of the scope of [the Court's] power to enter such orders is entirely hypothetical." *Id.* at *2. Similarly, Judge Margolis's ruling in *Great Am. Ins. Co. of NY v. Summit Exterior Works, LLC*, No. 3:10CV1669 (JBA), 2001 WL 4742218 (D. Conn. Oct. 6, 2011), did not address the asset-transfer issue. Nor could plaintiff properly rely on decisions involving special injunctive authority under a Connecticut statute involving security certificates that is not at issue in this case. *See Inter-Reg'l Fin. Grp., Inc. v. Hashemi*, 562 F.2d 152, 154–55 (2d Cir. 1977); *Sec. Ins. Co. of Hartford v. Trustmark Ins. Co.*, 221 F.R.D. 300, 302–03 (D. Conn. 2003). Nevertheless, other decisions that are not binding on this Court tend to support plaintiff's position. *See, e.g.*, *Metal Mgmt., Inc. v. Schiavone*, 514 F. Supp. 2d 227, 240 (D. Conn. 2007) (dicta stating that "[t]he district court possesses the authority to transfer [defendant's] assets into Connecticut to effect a prejudgment remedy" but reserving issue whether injunction requirements are met); *Hamma v. Gradco Sys., Inc.*, Nos. B:89-437 (JAC), 8:88-115 (JAC), 1992 WL 336740, at *3 (D. Conn. Nov. 4, 1992) (predicating authority to order movement of out-of-state assets into the state "on the court's *in personam* jurisdiction, which gives the court inherent equitable authority to order a party to do certain acts either within or outside the court's territorial jurisdiction").

accompanying disclosure of the Raich firm's accounting report), defendants shall disclose on or before **Friday, May 23, 2014**, all of the records for each of the three defendants in response to the specific itemized discovery demands identified by plaintiff at pages 10–11 of Doc. #121.

The foregoing discovery disclosure schedule is without prejudice to the Court's consideration at a later time of sanctions to be imposed against defendants for past non-compliance with discovery demands and orders. The Court further notes its intent to enter an order of sanctions against defendants—including to consider the possibility of entering default judgment—if they fail to comply with this order on or before May 23, 2014. The Court has scheduled a hearing on May 28, 2014, and it expects that the parties will be prepared to address whether defendants have complied with this order and the scope of any sanctions against the defendants that should enter in light of their production of documents in response to this order.[7]

### E. Conclusion and Order

For the reasons set forth above, defendants' motion to vacate the prejudgment remedy order, to enter a new prejudgment remedy order, and to require plaintiff to disclose assets (Docs. #157, #158) is **DENIED**.

For the reasons set forth above, plaintiff's motion for a preliminary injunction to require defendants to bring assets into Connecticut and for sanctions against defendants for their non-compliance with discovery demands (Doc. #121) is **DENIED**. Each of the defendants, however, shall disclose on or before **Friday, May 23, 2014**, tangible marketable assets in each of their individual names that are held in the United States and that are sufficient to meet the prejudgment remedy amount of $8,858,949. For each of defendants' disclosures, these assets must bear the ownership name of each defendant, must have their specific location disclosed, and

---

[7] It is the Court's understanding from the last hearing that plaintiff has now complied with outstanding discovery demands but, if this is not so then plaintiff shall ensure full compliance by May 23, 2014, and the Court will similarly consider the entry of sanctions against plaintiff if there is continuing non-compliance.

must have a readily determinable market value and without impediment or cloud to their attachment upon additional process. If any of the defendants do not have sufficient marketable assets within the United States, then such defendant(s) shall disclose in the manner indicated above any marketable assets that they hold worldwide in their name in an amount that suffices as to each of them to satisfy the prejudgment remedy order of $8,858,949.

In addition, as to plaintiff's pending financial discovery demands for which defendants have not yet produced responsive documents, defendants shall disclose on or before **Friday, May 23, 2014**, all remaining records in response to the specific itemized discovery demands identified by plaintiff at pages 10–11 of Doc. #121. The parties shall address the issue of compliance and any sanctions for non-compliance at the hearing before the Court that is scheduled for May 28, 2014.

Defendants' cross-motion for sanctions (Doc. #132) is **DENIED** absent a showing of plaintiff's bad faith and continuing non-compliance.

It is so ordered.

Dated at Bridgeport, Connecticut, this 8th day of May 2014.

/s/ Jeffrey Alker Meyer
Jeffrey Alker Meyer
United States District Judge