UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BENJAMIN ROBERTS, | : |
| Plaintiff, | : |
| v. | : Case 3:12-cv-01222-JAM |
| TRIPLANET PARTNERS LLC, et al., | : |
| Defendants. | : |

### MEMORANDUM IN FURTHER SUPPORT OF MOTION TO COMPEL

Pursuant to Fed. R. Civ. P. 37 and Rules 7(a) and 37 of the Local Civil Rules, Defendants Sophien Bennaceur and Imed Bennaceur ("Defendants") file this reply to Plaintiff Benjamin Roberts' ("Plaintiff") opposition to Defendants' motion to compel.

### ARGUMENT

Plaintiff's opposition makes three arguments: (1) Defendants' counsel did not comply with the meet and confer requirements under the Federal Rules and the Local Rules; (2) all relevant documents have been produced, will be produced or do not exist; and (3) Plaintiff's notes brought to the deposition are privileged. Plaintiff also demands attorneys' fees for opposing Defendants' motion.

None of these arguments defeat Defendants' motion to compel production of documents identified by Plaintiff at his deposition and they do not entitle Plaintiff to attorneys' fees.

**A. Defendants' Counsel Complied with the Meet and Confer Requirements**

In his brief, Plaintiff accuses Defendants' lawyers of making false statements by stating they conferred with Plaintiff's counsel during Plaintiff's deposition. Docs. 211 at 2, 211-1 at ¶ 7. In Plaintiff counsel's declaration, he describes the meet and confer: "Defendants' counsel

1

suggested more than once that certain documents referenced by Plaintiff had not been produced" and that "Defendants' counsel also requested a copy of Plaintiff's British passport…" Doc. 211-1 at ¶¶ 6-7.  At the deposition, Defendants' counsel requested documents that Plaintiff conceded he had not produced and Plaintiff's counsel stated both on and off the record that he would respond to Defendants' document requests "in short order":

> MR. O'ROURKE: Well, yeah. At the last hearing, there was a discussion that was outstanding discovery, too, from Mr. Roberts and it was stated that there was no outstanding –
>
> MR. STAMELL: I didn't know he was withholding documents.
>
> MR. O'ROURKE: He's not withholding documents.
>
> MR. STAMELL: Then he'll have no problem producing it.
>
> MR. O'ROURKE: Well, we'll see. I mean, we'll undertake to evaluate the question you asked him. He's heard it and will get back to you in short order.

Ex. A at 182:11-25.

Plaintiff never got back to Defendant in short order.  With the discovery deadline approaching, four days after the deposition, Defendants moved to compel and Plaintiff still has produced nothing, although Plaintiff stated he would "voluntarily produce" some documents, such as his British passport and air flight records (Ex. A at 24:23 – 25:18; doc. 211-1 at ¶ 7). Given the impending discovery deadline of July 11, the meet and confer requirement was met at the deposition.

**B. <u>None of the Documents Requested by Defendants Have been produced</u>**

Defendants request documents that track the substantive allegations in Plaintiff's amended complaint.  Plaintiff's counsel in Plaintiff's opposition brief and Mr. O'Rourke's declaration states that Plaintiff has produced all responsive documents.  But that is not Plaintiff's testimony, and statements by counsel in affidavits and briefs that are not made on personal

knowledge are not evidence and do not show compliance with discovery demands. *Abu-Nassar v. Elders Futures Inc.*, 1991 WL 45062 (S.D.N.Y. 1991). Plaintiff has not repudiated his deposition testimony and there is no affidavit from Plaintiff claiming he produced all relevant documents in his possession or the documents he identified specifically in his deposition.

1. Document Request No. 15 – Plaintiff has Not Produced all Source Documents Used in His Financial Compilation_____

Plaintiff testified at his deposition that his financial compilation was based on spreadsheets and other information he received from TriPlanet Partners, LLC ("TPP") employees, including a former TPP employee, Michelle Ross. Ex. A 164:19 – 165:17-24; 269:10-23. Although Plaintiff attached several documents to his compilation relied upon by the Court in issuing the prejudgment remedy order, Plaintiff testified that other documents existed, including searchable excel spreadsheets and emails he received from Ms. Ross. *Id.* Plaintiff stated he would produce these documents; nothing has been produced. *Id.*

Plaintiff counsel's contrary representations that every document referenced in the motion to compel has been produced is impeached by his client's testimony (doc. 211-1 at ¶ 6). *See Schiess-Froriep Corp. v. S. S. Finnsailor,* 574 F.2d 123, 126 (2d Cir. 1978) (holding that attorney affidavit could not support summary judgment because it was based on hearsay, not the "personal knowledge of the affiant").

Source material relied upon by Plaintiff in preparing his compilation is relevant to his damages claim and should be produced.

2. Document Request No. 16 – Plaintiff Has Not Produced Documents He Claims Show a Compensation Structure That Contradicts the Terms of Defendants' Employment Agreements_____

When asked at his deposition whether Plaintiff had anything in writing to support his claim that Defendants or anyone else did not want salaries as TPP officers, Plaintiff stated he had

3

"business records", including "a series of e-mails [and] some documents" that supported his claim and promised he would produce these documents. Ex. A at 181:3. Plaintiff has produced nothing.

Plaintiff has not changed his testimony that he has other emails and documents. Plaintiff's counsel now asserts "[o]ne email exists" that "entirely supports Plaintiff's contention that the Bennaceurs claimed not to be taking salary in 2010 and 2011…" Doc. 211 at 4. The one email that Plaintiff produced is from Sophien Bennaceur ("Sophien") to Plaintiff on December 15, 2010 and states, in part:

> 8. I did not pay myself salary for 2010
>
> 9. **After completion for P&L 2010 and all regular compensation and partner loans and all suppliers paid, we will be determining the true profitability value then we make 2010 profit sharing distribution.** Please do not expect that until mid March.

Doc. 211, Ex. 4 (emphasis added).

Nothing in the email states that Sophien or anyone else did not want a salary for work in 2010 or any other year nor does the email state other Bennaceur brothers were foregoing compensation. Moreover, the statement "I did not pay myself salary for 2010," immediately followed by "all regular compensation" would have to be paid out to "determine[] the true profitability" of TPP indicates that regular salaries must be deducted from revenues in determining the profitability of TPP. The one email is not the "series of emails" that Plaintiff describes in his deposition. *Id.*

   3. Document Request No. 2 – Plaintiff Has Not Produced Evidence of Travel
       Documents Which Would Show His Entry into or From the U.K.

Despite having no personal knowledge, Plaintiff's counsel claims Plaintiff produced the "only document in his possession that reflects any air travel by him during the relevant period of

time: a copy of all stamped pages from his U.S. passport." Doc. 211 at 4. Plaintiff counsel's statement is unbelievable and contradicted by Plaintiff who testified that he had travel records that documented flights into and out of the UK:

> Q. If you read further travel records, do you have a record of what the –
>
> A. I can get that for you
>
> Q. -- for the flights?
>
> A. Yeah.
>
> Q. So you would have documentation on the flights?
>
> A. That's what I just can't recall exactly which one --
>
> Q. All right.
>
> A. -- but if you need them, I can –
>
> Q. All right. Okay. We can make a request for that.
>
> A. Yeah.
>
> (THEREUPON, THERE WAS A DISCUSSION OFF THE RECORD.)
>
> MR. STAMELL: Have they been produced?
>
> THE WITNESS: Oh, I didn't know you didn't have that.

Ex. A at 24:23 – 25:18.

In October 2013, Defendants requested "All documents concerning Plaintiff's air travel", including air travel tickets, receipts and travel-related loyalty or rewards programs. Plaintiff has produced none of these documents and since tickets are booked, confirmed and boarding passes issued by email, Plaintiff should be able to document his travels or provide a very good explanation of what happened to them.

    4.   Document Request No. 9 – Plaintiff Has Not Produced Documents Relevant to His Fraud Claims Against Defendants

Plaintiff objects to producing his tax returns for 2009, 2012 and 2012 claiming they are intended to distract the Court and "have no bearing on any issues related to these proceedings, and are entirely irrelevant." Doc. 211 at 12-13.  To the contrary, Plaintiff's deposition testimony prompted Defendants to renew their July 2013 request for Plaintiff's tax returns.  Defendants contend that Plaintiff's compensation before and after his employment with TPP will show that he suffered no damages to support his fraud claims –those claims then can be dismissed.

    Plaintiff's amended complaint claims fraudulent inducement, fraud and securities fraud alleging Defendants made false statements to induce Plaintiff to leave his "lucrative position at The Hartford, with all the benefits Roberts received there as an employee…" Doc. 110, Counts III, IV, VI.  Under Connecticut law, an element of a cause of action sounding in fraud, including claims of misrepresentation and fraud in the inducement requires Plaintiff to suffer an injury. *456 Corp. v. United Natural Foods, Inc.*, 2011 WL 87292, at *3 (D. Conn. Jan. 11, 2011).  The same holds true for securities fraud claims. *Bay Harbour Mgmt. LLC v. Carothers*, 282 F. App'x 71, 74 (2d Cir. 2008).  Plaintiff's compensation before and after his employment with TPP is relevant to determine if he suffered damages as a result of Defendants' alleged misrepresentations. *See Leisure Resort Tech., Inc. v. Trading Cove Associates*, 277 Conn. 21, 33, 889 A.2d 785, 793 (Conn. Super. Ct. 2006) (if the damages remedy is sought in a fraud claim, pecuniary injury is a necessary element of the cause of action.) (citing *Kilduff v. Adams, Inc.*, 219 Conn. 314, 329, 593 A.2d 478, 486 (Conn. Super. Ct. 1991).

    Plaintiff testified he was paid more money in the 22-month period by TPP than in any other 22-month period in his professional career. Ex. A 211:13 – 212:8.  Plaintiff also testified

his base salary at The Hartford was $225,000 before he was hired by TPP and testified about his compensation with his current employer, Accenture.[1]

Because Plaintiff has refused to provide his tax returns, with the discovery deadline approaching, Defendants were forced to issue subpoenas to The Hartford and Accenture requesting all tax related documents issued by each employer for all years of Plaintiff's employment.[2]  *See* Ex. C.

>   5. Document Request No. 10 – Plaintiff Has Not Produced Bank Statements Relevant to Defendants' Claim that Plaintiff Breached His Employment Agreement

Plaintiff's bank statements are relevant because they may show monies Plaintiff received from his business called Blue Sapphire Consulting Group that he started.  Although Plaintiff's counsel claims Blue Sapphire is not a competing business, the company's website, which is still active, offers services that compete with TPP and Blue Sapphire went into this business a few weeks after Plaintiff left TPP.

Plaintiff tried to poach TPP's business in violation of the non-compete in his employment agreement.  Plaintiff's deposition testimony confirms he held meetings and telephone conference with TPP employees to discuss business opportunities in the "London market" immediately after starting Blue Sapphire:

> Q. What about a gentleman by the name of Michael Scott?
>
> A. Michael Scott and I talk with each other. We did no business together, but we certainly had conversations after I departed TriPlanet. I was the head of 165 people and the people you are naming are the top six or eight people that worked for me.

---

[1] Plaintiff's testimony regarding his compensation at Accenture was marked confidential at his deposition and was bound under a separate cover.  As a result, Defendants will file a motion to seal that portion of Plaintiff's deposition testimony.  *See* Ex. B.

[2] Plaintiff claims he produced a "tax document" that identifies his reported income for 2010 from The Hartford. Doc. 211 at 7.  The document is a computer screenshot attached to a letter Plaintiff purportedly received from the State of Connecticut.  The document is not a W-2 statement issued by The Hartford.  It has not been identified and is not responsive to Defendants' document request.

>Q. You talked to them about coming to work with you at Blue Sapphire?
>
>A. I spoke to them about developing an alternative in London market because Sophien had stopped doing business in TriPlanet and most of these individuals had stopped working with him months prior.

Ex. A at 250:12-25.

Plaintiff testified that he has never received any revenue from Blue Sapphire during the two-year period he has had the business. Defendants want to see his bank statements to see if Plaintiff received money in violation of his non-compete that would entitle TPP to damages.

### C. Handwritten Notes Brought by Plaintiff to the Deposition Are Not Privileged and Were Used To Refresh Plaintiff's Recollection; the Notes Should be Produced.

Plaintiff's counsel claims the notes Plaintiff brought to his deposition were not used to refresh his recollection. Once again, Plaintiff's counsel is undone by his client who testified he created the notes so he could use them to "jog my memory" and that the notes were used "to think about the questions you may ask me today and prepare my thoughts for those [questions]." *Id.* at 8:5-15. Plaintiff also stated the subject of the notes was his "thoughts in preparation for talking with [Defendants' counsel]" (*id.* at 5:15-17) and that his attorney did not tell him what to write in the notes. *Id.* at 8:18-20.

For reasons discussed in Defendants' opening brief, Plaintiff' testimony shows that he prepared notes that were fashioned for his own use in answering Defendants' questions and he continued to write notes during the deposition. The notes should be produced.

### D. Sanctions Against the Defendants are Not Warranted

Plaintiff contends that he is entitled to the cost of filing his opposition to the instant motion because the Rule 37 meet and confer requirement was not met and Defendants lack a good faith basis to file the motion. Doc. 211 at 3. As stated above, Defendants' counsel and

8

Plaintiff's counsel conferred during Plaintiff's deposition and did not reach an agreement. Defendants filed the instant motion with the discovery deadline in mind.  More conferring was not going to generate documents.  There was no time to do more based on Plaintiff counsel's refusal to produce documents.

Plaintiff suggests sanctions are appropriate because the motion is an "obvious effort to deflect attention from Defendants' own intentional noncompliance" and contradicts Defendants counsel's statement at the May 28 hearing that Plaintiff had met his discovery obligation.  But on May 28, Defendants did not know that Plaintiff had withheld documents.  Plaintiff testified that he had in his deposition on June 9.

Defendants 'motion to compel is based on Plaintiff's deposition testimony and Plaintiff's counsel does not explain why Plaintiff's shortcomings in document production are not entitled to the same kind of motion to compel that Plaintiff has made against Defendants.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion to compel should be granted and the Court should grant such other and further relief as it deems just and proper.

Dated:  July 8, 2014
    New York, New York

    STAMELL & SCHAGER, LLP

    By: /s/ Andrew R. Goldenberg
    Jared B. Stamell
    Andrew R. Goldenberg
    555 Fifth Avenue, 14th Floor
    New York, NY  10006
    Telephone: (212) 566-4047
    Facsimile: (212) 566-4061
    stamell@ssnyc.com
    goldenberg@ssnyc.com

*Attorneys for Defendants Sophien*
*Bennaceur and Imed Bennaceur*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 8, 2014, a true and correct copy of the foregoing instrument was served upon the counsel of record and Defendants via email.

By: /s/ Andrew R. Goldenberg